at all. Arguments not to exceed 15 minutes per side. Mr. Thompson, you may proceed for the appellant. Good morning, your honors. I'm Jeff Thompson here today representing Sheriff Esko Jarnigan. I would like to reserve three minutes for rebuttal, please. This case arises out of an assault at the Hamblen County Jail in Hamblen County Tennessee. Sheriff Jarnigan is appealing the denial of qualified immunity to him. The plaintiff does not cite to any factual disputes and the district court did not find any factual disputes. Respectfully, Sheriff Jarnigan submits that the district court took an agreed upon set of facts and reached the wrong conclusion about those agreed facts with regard to qualified immunity. The material facts in this case are not disputed and those facts are that the plaintiff was charged with a felony, the plaintiff was classified, the plaintiff was screened under the Prison Rape Elimination Act screening procedure, the plaintiff was placed in a four person cell with two other inmates. The two other inmates were charged with misdemeanor crimes. Plaintiff's two cellmates were not charged with violent crimes and had no history of violence. The inmate who assaulted plaintiff was actually charged with a violation of probation and a failure to appear. Prior to the assault, plaintiff had never told anyone that he feared for his safety and had not told any correction officer that he had any issue with his cellmates whatsoever. So their allegations are not really plaintiff specific, they're just more the generic overcrowding of the prison and your defense to that is that based on these specific allegations you can't show a causal connection between the generic problems and the specific incident. So since this is an interlocutory appeal, I wonder if you could comment on whether we even have jurisdiction to consider this causation element because generally speaking you think of interlocutory appeals as designed to preserve the right to qualified immunity but your causation argument is less about whether there was a clearly established right and more about whether the generic problems at the prison caused the harm and I'm not certain that we would have interlocutory jurisdiction to consider that type of causation element of a claim. Well Judge Murphy, it's our position that the court does have jurisdiction to hear the appeal because the facts are not in dispute. We are not disputing that the Hamlin County Jail is overcrowded, we are not disputing any of the general facts that the plaintiff alleges. We're simply disputing the legal conclusion that the district court gave for those facts. So I would agree that there's jurisdiction to consider whether the facts of overcrowding rise to the level of deliberate indifference or if there is a clearly established right about deliberate indifference. But that's a little different than the question of whether even assuming there is deliberate indifference that the sheriff's deliberate indifference based on the overcrowding actually caused the plaintiff's injury. And it's that latter one that seems more fact specific and less suited for an interlocutory appeal. Respectfully take a look at the facts that we have and decide based on that set of facts is qualified immunity available. The only cases that do not allow the court to take jurisdiction are those where the defendant disputes the facts. And in this case we don't have that. That's not entirely true. I mean the case law says that it's the immunity question that we have jurisdiction over and the question whether there is a legitimate question of fact is not something we hear on an interlocutory appeal. I mean there are issues that we don't address on an interlocutory appeal that we don't have jurisdiction over. It's not just, fact question. Your Honor, citing just to one case that we've cited in our brief, Bishop v. Hackle, it's a Sixth Circuit case. Counsel, when you're speaking down there it's hard to hear you. I'm sorry, Your Honor. Bishop v. Hackle, it's a Sixth Circuit case that we, one of the Sixth Circuit cases that we cited to. And it clearly states that when defendants accept facts in the light most favorable to the plaintiff, the Sixth Circuit should exercise jurisdiction on whether the plaintiff could establish a failure to protect claim. And that's what we have here. Whether the plaintiff established what? Whether the plaintiff can establish a failure to protect claim. In other words, qualified immunity. The Sixth Circuit is replete with various cases holding that the material facts relevant to the court's qualified immunity analysis are not in dispute or are accepted by the defendants as true, then the court should take jurisdiction over that and rule on qualified immunity. Can that lead to a situation where, I mean, it's kind of surprising. According to the plaintiff, the inmate in the cell next to him had a shank, right? That's correct, Your Honor. Okay. So, if an inmate has a shank, that's some indication that the jail is not able to properly monitor the inmates, that the inmate would have something like that. And why can that not be a result of overcrowding? Your Honor, that gets into our causation argument. The plaintiff has the burden of proving the causation between overcrowding and what happened. And in this case, the plaintiff's particular area that he was in was not overcrowded. In fact, we cited to the Russell v. Robertson County case in our brief, and that case clearly holds that while the jail was overcrowded, the plaintiff's individual cell was not overcrowded. Since the cell was not overcrowded, the plaintiff can neither carry his burden of proof connecting the assault with the conditions of his cell nor provide a constitutional violation relating to this incarceration in the cell. So, the causation between overcrowding at the jail and what happened to the plaintiff in this case individually. So, for instance, in this case, again, it is undisputed that the jail itself is overcrowded, but the area in which plaintiff was placed was not overcrowded. But there was – there's some indication that the inmates were not properly monitored, right? Your Honor, I would – having represented jails for many, many years, I would respectfully disagree that the fact that an inmate has a shank means that the inmates are not being properly monitored. I mean, there's simply no way for a jail to keep every bit of contraband out. I mean, that just simply doesn't happen. Of course, it's the jail's goal to try to make sure that no contraband exists. But again, in this – I believe in this case, it was a shower tile. I mean, there's just – there's no way for a jail to be able to, with 100 percent accuracy, make sure that no contraband such as that exists within the jail. Despite the very best efforts of anyone, I mean, that just simply can't happen, unfortunately. But again, the Sixth Circuit is replete with cases that there has to be – there has to be causation between the event that occurred and the overcrowding or other conditions claimed by the plaintiff. There's another case that we cited, Doe v. Sullivan County, which had – which has remarkably similar facts, although the facts are really more in favor of the plaintiff in that case, I would argue. In the Doe v. Sullivan County case, the plaintiff was 19 years old, weighed 125 pounds, and suffered from a mental disability. In that case, the plaintiff was sexually assaulted. And the plaintiff claimed that the jail was overcrowded, the jail was understaffed, security checks were not done often enough, and the evidence and the like most favorable to the plaintiff, we cannot conclude that these conditions caused the assault. So, respectfully, on a qualified immunity argument, we have a case that is more favorable to the plaintiff, that is well – it is clearly established law, and in that case, the court held that – the court held that there was not a constitutional violation. Was that case on interlocutory appeal from the denial of summary judgment, or was it an affirmance of the grant of summary judgment? I believe – I believe it was an affirmance of grant of summary judgment, Your Honor. So it doesn't answer necessarily the question about whether we have jurisdiction over causation? Well, Your Honor, I believe there are cases that we've cited in our brief that establish that causation is an element that's required on a qualified immunity appeal, and that's something that the court can look at. Again, I think the only thing the court has to be concerned with on a qualified immunity appeal regarding the question of jurisdiction is whether or not there are any facts that are in dispute. I think the court can take a look at the facts and draw a legal conclusion related to those facts, and this is a prime example of a perfect case for the court to consider qualified immunity, because the district court didn't find factual disputes, plaintiff doesn't cite to any factual disputes, defendant states that we're accepting, again, all these facts as true, where we are simply saying that the wrong legal conclusion was drawn regarding the qualified immunity analysis. And again, I think causation is a very important part of the court's analysis, because essentially... But you don't think there's any factual component to the causation question? I mean, it is, I agree that everybody agrees that the overcrowding, one manifestation of that was that there weren't as frequent security checks as would have been nice to have, but isn't there a factual aspect to the question of whether that, the infrequency of the security checks, whether that was a causation factor? Your Honor, again, I think it is the plaintiff's burden to prove that the security check somehow caused this incident, and there's no proof in the record that the security checks in this case somehow caused or contributed to this incident. Again, this is an isolated incident that occurs without warning, and if a security check... There's not any evidence in the record that security checks in this particular cell on this particular day were not taking place at the times that they should, but there has to be proof by the plaintiff of a causal connection between inadequate security checks and what happened in this case. Again, this was an isolated incident that happened very quickly, and there's just simply no proof that if a security check had happened every 15 minutes, that this plaintiff couldn't have had the same assault happen that occurred in just a matter of mere moments. I see my time is up. Any other questions? Thank you. Hi, good morning. May it please the Court, my name is Lance Baker. I represent Zach Beck for the Plaintiff Today appellee. I want to first start off by just... I know the Court doesn't necessarily like reading things, but I think it kind of goes to the heart of the case. Zach Beck is a jail consultant. He authored the 2010 assessment on the Hamlin County Jail and the 2011 assessment on the Hamlin County Jail. He stated that no one knows the jail context better than those who manage and operate the jail, but sometimes those who operate the jail lose sight of more staff is not always better when compared to working smart. Make no mistake about it, the Hamlin County Jail is an abysmal, decrepit, overcrowded, inhumane condition that is dangerous and life-threatening to essentially every inmate that walks in there at this point in time. I would first like to start off by addressing the factual disputes because nothing could be further from the truth. The record is replete with several factual disputes. First off, as far as addressing the security issues, there are at least seven years of Tennessee Correctional Institute reports that address the security issues. Esko Jarnagin, the sheriff, has been sheriff in Hamlin County since 2006. He continues to run for that job. He's had the benefit of having at least 15 letters addressed specifically to him by the Tennessee Corrections Institute that shows that his calls to meet each year on an inspection and then re-inspection, the minimum standard set out by TCI. So what's your limiting principle then? Under your theory of this case, because I think you would readily concede that the sheriff had no interaction personally with your client, is it your view that any time there's an inmate on inmate assaults, the sheriff is essentially strictly liable because of the decrepit state of this prison or jail? Judge Murphy, not exactly arguing that in this case. But isn't that the necessary implication? If we accept your argument because your argument is not tied to any specific knowledge of your client, it's basically because this jail is in such bad shape, overcrowding, misclassification, that he should be liable for your client's injury. I would think that that kind of legal analysis would apply to any inmate on inmate kind of violence. So do you have a limiting principle that would somehow show that it's not going to lead to essentially strict liability for every incident in this jail? Well, Judge, in this case I would like to make clear that's not the argument that we're making. But under these specific conditions, the fact that it's overcrowded, understaffed, these aren't just missing 15-minute interval security checks, right? I mean, for the better part of a decade, the sheriff has had and been on notice that it's anywhere from two to twelve hours. I mean, there are quotes in these reports that ultimately state that their own, the chief deputy, the jail administrator, they're advising correction officers not to go in cells if it's just them. I mean, essentially these inmates are running this jail. But to go... I mean, that response basically is a concession, that yes, you think that he should be liable because the jail is... I think the argument could certainly be made that under the... This is one of the worst in the state. It's still one of the... I think it may be the only remaining underground jail in the state. When you go down into the booking situation, when you go in to be booked in the lobby area where parents, family, friends would first come, you've got inmates, you've got a restraint chair that maybe somebody who's on suicide watch is shackled up to. You've got other inmates that are both male and female changing to go to court. So I think that's not our argument that it's a strictly liable... What is your argument? What is your causation argument? How did these conditions cause this injury? By failing to have enough staff, just because a cell is not overcrowded does not mean that the jail is not overcrowded, right? So if you've got other portions of the jail that are extremely overcrowded... Hamlin County Jail is certified for 255 people. Around this time there was approximately 375 to 400 folks in this jail. So if you're putting out fires over here, you can't be proactive over here. So just because the cell was not overcrowded per se doesn't mean that security checks were being done. I mean, Judge White, just to address the shank that you brought up, inmates are sleeping in the showers. I mean, they're having to put people in the showers. So you would think that somebody at some point would be going into cells and throughout these TCI reports they periodically say, this jail needs a shakedown. There's contraband everywhere. The inmates have this. The inmates have that. We've got to do something to be proactive to make sure that inmates are safe. To address the classification issue... So you're saying that one of the documented deficiencies is that inmates routinely have contraband in the cell because no one is checking? That is the inference that one can draw from those statements. From 2010 to 2017, just those seven TCI reports that I've reviewed, yes. From 2010 and all the way through 2016 or 2017, every one of those reports seemed to mention something about there needs to be a shakedown. Inmates have contraband, this, that, and the other. So if you're proactively going in there having infrequent checks, this potentially could have been found. If you have even video cameras set up, if you don't have enough staff, that's one of the issues in this case that goes to the deliberate indifference. I think it's the Loeb case. I think it's an 11th Circuit case that the appellant cites to. It ultimately talks about how the sheriff implemented... was there at the jail on a daily basis. This sheriff isn't at the jail on a daily basis. There's no educational programs. There's no counseling programs. There's no sexual assault counselor present. So you can see how, more or less, the sheriff has actual knowledge. He knows. He's admitted this. He's admitted each one of these things, that the jail is overcrowded, that it's dangerous. To my knowledge, he's continuing to represent that even after the order's been entered. What's your clearly established law? The way I read the district court's opinion, it suggested that it was clearly established the right to be free from deliberate indifference to instructed circuit courts repeatedly that you shouldn't frame the clearly established law at the highest level of generality. That strikes me as the highest level of generality for purposes of this type of claim. So I don't know that that is sufficient to put him on notice that this overcrowding is actually a constitutional violation. I think you would argue that there are a lot of cases from this court that would put the sheriff on notice that if he doesn't fix this prison, not only is it a violation of state law or whatever those Tennessee reports suggest, but also a violation of, I guess this is substantive due process because it's pre-conviction. What's your best case to suggest that the sheriff should have been on notice under the clearly established law that the overcrowding was actually a constitutional violation? Well, I don't think that overcrowding in and of itself is a constitutional violation. That's not my position, but all of these taken in conjunction for over a decade when he starts out there and then come forward to 2019, nothing has changed. Every year it's the same thing. We're going to build a new jail. We know about this. We're going to go to, you know, we're versus Brennan Sixth Circuit case makes clear that the plaintiff doesn't have to tell anybody specifically ultimately that he is going to be harmed or he's going to be sexually assaulted. So all these in conjunction. This is just, in my mind, an atypical claim. And the reason I say that is most of the claims in the failure to protect context, it's a personal interaction between a prison guard and the prison guard's failure to prevent violence when the prison guard had the opportunity to do so. This is a kind of a, at a very high level of generality, the senior leader of the county should have been put on notice. That's, it just seems to me that it's atypical to the types of failure to protect claims we see, which suggests to me that qualified immunity could be doing work here, that it's not clearly established because there's no precedent. That's really analogous to this, this theory of kind of the sheriff should have done more to fix the prison conditions. Judge Murphy, my position on that would, in maybe another set of circumstance or another jail, I would agree with you. But I think this jail, in these current conditions, is him. He's got a 2010 report from Jim Hart invited by the sheriff. Specifically, it sets out the sheriff is inviting us here. 2011, he's invited back by Jim Hart for another assessment. The Cardo-Gobel assessment in 2014. The 2015 National Institute of Corrections where the sheriff is personally inviting them to come and do a jail study. So I guess put on notice, our argument is he has actual knowledge of this. I mean, he knows how bad and decrepit and abysmal these conditions are. And still nothing has been done. One thing that I would like to point out before my time runs out is the budgetary argument that the appellant does make. That argument, in our opinion, has been waived at this point. It was not addressed in their summary judgment brief. We responded to what they argued in their summary judgment brief. They brought it up in, I think, a sentence or two in their reply brief. Judge McDonough, the district judge, made the correct notation that that could be considered by the jury as a mitigating fact. But it's not a point here where we're going to dismiss this case based on, you know, he goes to the county commission and, oh, we just don't have enough money. And the Loeb court sets that same precedent out, except in that case, the sheriff was much more proactive than this sheriff even. There are certainly things that Sheriff Jarnagan can do that don't cost him a thing. And in fact, he's admitted that. He's made quotes that fixing the classification system would not cost anything. But did the classification system even contribute here? No. In this case, the appellants state that there was not, if anything, that Mr. Beck was misclassified to his benefit. I don't necessarily agree with that. In fact, one of the inmates that actually, we allege, assaulted, sexually assaulted Mr. Beck, he was a convicted felon. He admits that in his deposition. So this fact that he's a misdemeanor offendant is just inaccurate, incorrect. He was found guilty, I believe, out of Illinois. So he's a convicted felon in this particular cell. And in fact, in Tennessee, a failure to appear on an A, even an A misdemeanor, is an E felony on a failure to appear. So he's being held on a felony and is a convicted felon. The other gentleman that was in the cell with Mr. Beck, he was... Probably not actually a gentleman. Right, probably not. I would agree with you. I would agree with you on that, Your Honor. But the other gentleman was serving a sentence on an aggravated burglary charge. So those are all factual disputes. That's a factual dispute. The fact that the sheriff, Jarnigan, had general knowledge, as the appellant likes to frame. I mean, there is a litany of evidence that he is on actual notice. Not constructive, actual notice. Just a note as far as the TCI report goes. There was a report about 39 days prior to the alleged assault that stated that there were time gaps in security checks between 2 and 10 hours. They came back 9 days prior to the sexual assault. Nothing has been changed at that point. Still 2 to 10 hours. The sheriff has responsibility. He has a constitutional and statutory duty to take charge and care of these inmates that are incarcerated in his jail. He has ultimately failed to do so. He's had a decade. The budgetary constraints and the cases that the appellant cites to actually stand for the proposition that it's not an excuse. It is just not an excuse that we do not have the money to do this. And in fact, it's our opinion that the sheriff continues to represent, actually, that it's not necessarily a budgetary constraint issue. It seems like a good argument for the county, right? And you're allowed to proceed with the county if the county's not here on appeal. But for the sheriff, it seems somewhat of a sympathetic idea that he's not in control of the budget streams if the county is. So how would you respond to that? Well, as far as the precedent that we have, your honor, that's still not good enough. It goes back to the heart of the free things, the things that do not cost any money. Sheriff Jarnagan stated it would not cost anything to fix this classification system at all. The disciplinary process, it's vital. They're still, through 2010 through 2017, they still don't have a proper disciplinary process. And TCI reports continually say this is vital to basically controlling the environment in this jail. A disciplinary process for the inmates? For the inmates, yes, your honor. Video installations, having shakedowns, those are things that wouldn't cost a thing. Video installations wouldn't cost anything? It would be relatively minor to hiring, you know, ten new staff, putting up some sort of video camera in the places that, you know, inmates know that they're not being watched or a security officer is not going to come back anywhere from three to ten hours. So these are things that could have been done, alternative measures that could have been taken for the better part of a decade and have not been. So that's why we're asking to affirm the district court's opinion. Thank you, your honor. Thank you. I would like to, excuse me, I'd like to point out that, of course, I don't believe video monitoring would have helped the situation as this took place in a cell. And according to TCI rules, you're not allowed to have video cameras in actual cells in the living quarters where people use the bathroom, sleep, etc. So I don't think videoing... How do you respond to just the high-level equitable point that these TCI reports have been coming out for the last several years and nothing seems to have changed? Judge Murphy, I would respond by saying that you are correct that perhaps that is a case to be made against the county, but the sheriff does not control the purse strings. There's no question that the sheriff can't be responsible for issues caused by budgetary reasons. But again, I think we can get back to the causation. Did any of this have anything to do with the event in this case? And I think the answer is no. Under the Doe versus Sullivan County case, we have an arguably much worse situation. So how can the sheriff in this case be on I would like to also briefly touch on the fact that we've spent some time on causation, but of course there is an objective and a subjective prong to the analysis against Sheriff Jarnagan. And under the objective prong, the plaintiff has to be... If it's not going to be a case where there was direct interaction, which is what the vast majority of these cases are, an inmate says, I've got a problem and somebody refuses to do anything about it. That's the vast majority. The only other category of these cases is the class of cases that flow from Farmer versus Brennan. And those cases require an identifiable group of prisoners who are singled out. In the Farmer case, the plaintiff was a transsexual who was singled out due to his sexual orientation. The Taylor case that we cited, the plaintiff was mentally disabled and had a seizure disorder. Again, in this case, plaintiff was cited to nothing that would bring his plaintiff into an identifiable group of prisoners that would allow for liability under the Farmer versus Brennan standard. And then, of course, under the subjective prong, the sheriff has to have a sufficiently culpable state of mind. And in this case, there is no culpable state of mind. There's a robust body of authority that qualified immunity is granted if inmate threats are misjudged. And in this case, Sheriff Jarnagan had no notice whatsoever. Therefore, it's impossible for him to have a culpable state of mind. So I see that my time is up. Unless the court has additional questions, we would respectfully state that the undisputed facts do not establish the objective or subjective prongs and ask the panel to reverse the decision in the district court and grant qualified immunity to Sheriff Jarnagan.